**Priority** ✓
**Send** ✓
**Enter** ____
**Closed** ____
**JS-5/JS-6** ____
**JS-2/JS-3** ____
**Scan Only** ____

FILED
CLERK, U.S DISTRICT COURT

JUN 2 2006

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| MARIA RAQUEL RODRIGUEZ, ROBERTO RODRIGUEZ, JUAN LUIS RODRIGUEZ, YOLANDA TAPIA and GRISELDA RODRIGUEZ, through her next friend MARIA RAQUEL RODRIGUEZ <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, et al., <br><br> Defendants. | No. CV 99-11821 CBM (Ex) <br><br> ORDER RE: AMOUNT OF PLAINTIFFS' REQUESTED ATTORNEYS' FEES |

The matter before the Court is Plaintiffs' Request for Attorneys' Fees in the Amount of $1,257,864.20 and Defendants' Objection thereto.

## JURISDICTION

This action is before the Court pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), and 1367.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This litigation arose out of a pre-dawn raid erroneously conducted at the

- 1 -

DOCKETED ON CM

JUN - 5 2006

BY _____ 022

1    home of the Rodriguez family by four agents of the former Immigration and

2    Naturalization Service ("INS").

3          In their operative Complaint, Plaintiffs raised the following claims for relief

4    against the individual agents and the United States: (1) Fourth Amendment

5    Violation; (2) Fifth Amendment Violation; (3) Violation of the California

6    Constitution; (4) Violation of Cal. Civ. Code § 52.1(b); (5) Intentional Infliction

7    of Emotional Distress ("IIED"); (6) Negligent Infliction of Emotional Distress

8    ("NIED"); (7) False Imprisonment; (8) Negligence; and (9) Federal Tort Claims

9    Act ("FTCA").    On July 9, 2002, Defendants filed a motion for summary

10   judgment with respect to all of Plaintiffs' claims.    The motion was granted in part

11   and denied in part on August 19, 2002.[1]

12         A bench trial on the FTCA claims (IIED, false imprisonment and

13   negligence) was held.    On December 9, 2004, the Court entered judgment in favor

14   of the Plaintiffs, awarding $230,000.000 in damages.    The remaining claims

15   against the individual agents were dismissed via a stipulated order entered on

16   March 16, 2005.[2]

17         Plaintiffs filed a motion for attorneys' fees under the Equal Access to Justice

18

19         [1]    The Court granted summary judgment in favor of the individual agents on the

20   claims for violations of the Fifth Amendment, California Constitution, and Cal. Civ. Code §
     521.(b), as well as the claim for negligent infliction of emotional distress.  The Court denied

21   summary judgment on the remaining claims against the individual agents for violations of the

22   Fourth Amendment, IIED, False Imprisonment, and Negligence, and the claims against the
     United States under the FTCA.

23
           [2]    Pursuant to 28 U.S.C. § 2676, entry of judgment against the United States under

24   the FTCA barred Plaintiffs from obtaining any additional recovery against the individual agents.
     See 28 U.S.C. § 2676 ("The judgment in an action under section 1346(b) of this title [28 U.S.C. §

25   1346(b)] shall constitute a complete bar to any action by the claimant, by reason of the same

26   subject matter, against the employee of the government whose act or omission gave rise to the
     claim.").

27
                                              - 2 -

1    Act ("EAJA"), 28 U.S.C. § 2412(b).   In the interest of judicial economy, the

2    parties stipulated to bifurcate the fee proceedings so as to have the Court separately

3    consider: (1) Plaintiffs' entitlement to fees; and (2) the proper amount of the fee

4    award, if any. *See generally* Stipulated Motion to Bifurcate Proceedings on

5    Plaintiffs' Motion for Attorneys' Fees Under 28 U.S.C. § 2412(b), March 17,

6    2005.

7       The Court granted Plaintiffs' motion insofar as it concerned Plaintiffs'

8    entitlement to fees, based on a finding that the Government acted in "bad faith" in

9    litigating certain defenses to its liability under the FTCA and in engaging in certain

10    pre-litigation conduct.  The Court provided Defendants with additional time to file

11    any objections to the amount of fees requested.  Defendants filed a Motion to

12    Reconsider the Court's Order; that motion was denied by the Court.

13       In accordance with the Court's Order and the parties' stipulation, Defendants

14    have filed objections to the *amount* of Plaintiffs' requested fees.  Plaintiffs filed a

15    timely Reply and the matter was taken under submission.

16                    **DISCUSSION**

17    **I.**     **Whether Plaintiffs Are Entitled to Fees for the Entirety of the Litigation**

18       In awarding attorneys' fees to a prevailing party under 28 U.S.C. § 2412(b)

19    based on "bad faith" conduct on the part of the United States and/or its agencies,

20    the Court may award those fees which were incurred as a traceable result of the bad

21    faith.  Such an award may encompass the entire course of the litigation, if all the

22    fees and costs are so traceable. *See Brown v. Sullivan*, 916 F.2d 492, 497 (9th Cir.

23    1990) ("The district court may award attorney fees at market rates for the entire

24    course of litigation, including time spent preparing, defending, and appealing the

25    two awards of attorney fees, if it finds that the fees incurred during various phases

26    of litigation are in some way traceable to the [] bad faith."); *United States v.*

27

1  *Corbett*, 1993 U.S. Dist. LEXIS 14130, * 23-24 (E.D. Wa. 1993) ("If all fees and

2  costs incurred are so traceable, then the entire costs of litigation may be assessed

3  without considering whether certain discrete tangents of the action may have been

4  pursued in good faith.").

5        In the instant case, Plaintiffs maintain that they are entitled to *all* fees

6  incurred over the *entire* course of the litigation because "[e]very phase of the

7  litigation was inextricably intertwined with issues emanating from the

8  Government's bad faith. . . ." and that the litigation ". . . would certainly not have

9  been prolonged for over four years or even litigated at all but for Defendants' bad

10 faith." Reply at 3.   The Court agrees and finds that Plaintiffs are entitled to fees

11 from the lawsuit's inception.

12       Unlike the cases cited by Defendants, the Court in this case found that the

13 agents' "pre-litigation" conduct—the reckless and erroneous raid on the Rodriguez

14 residence—was perpetrated in "bad faith." *See* Order Granting Plaintiffs' Motion

15 for Attorneys' Fees, Aug. 30, 2005, at 8. Thus, from its inception, the fees incurred

16 during the litigation were traceable to Defendants' bad faith. The fact that

17 Defendants prevailed on their *Bivens* claims against the individual agents on their

18 motion for summary judgment does not support a different conclusion, as *Bivens*

19 and the FTCA were alternative grounds for Plaintiffs' ultimate recovery.

20       Indeed, as the Supreme Court has made clear, "[w]hile the parties' postures

21 on individual matters may be more or less justified, the EAJA—like other fee

22 shifting statutes—favors treating a case as an inclusive whole, rather than as

23 atomized line-items."   *Comm'r, INS v. Jean*, 496 U.S. 154, 161, 110 S. Ct. 2316,

24 110 L. Ed. 2d 134 (1990); *see also Gray Panthers Project Fund v. Thompson,* 304

25 F. Supp. 2d 36, 41 (D.D.C. 2004) ("Because cases should be treated as a whole in

26 determining EAJA fees, this court will make one determination of bad faith

27

- 4 -

1 | concerning the Secretary's pre-litigation conduct.").

2 |     In sum, contrary to Defendants' arguments, the Court cannot find that there

3 | are specific portions of the litigation which were not affected by the Defendants'

4 | "bad-faith" and, given the remedial purposes of the EAJA, it would not be

5 | appropriate to do so. Accordingly, the Court finds that Plaintiffs' are entitled to

6 | fees for the entirety of the litigation.

7 | **II.    Reasonableness of Fees Sought**

8 |     "The most useful starting point for determining the amount of a reasonable

9 | fee is the number of hours reasonably expended on litigation multiplied by a

10 | reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S. Ct. 1933,

11 | 76 L. Ed. 2d (1983).  After calculating this "lodestar" amount, the district court

12 | may adjust the fee up or down according to twelve factors identified in *Kerr v.*

13 | *Screen Extras Guild, Inc.,* 526 F.2d 67 (1975).  These factors are:  (1) the time and

14 | labor required, (2) the novelty and difficulty of the questions involved, (3) the skill

15 | requisite to perform the legal service properly, (4) the preclusion of other

16 | employment by the attorney due to acceptance of the case, (5) the customary fee,

17 | (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client

18 | or the circumstances, (8) the amount involved and the results obtained, (9) the

19 | experience, reputation and ability of the attorneys, (10) the "undesirability" of the

20 | case, (11) the nature and length of the professional relationship with the client, and

21 | (12) awards in similar cases. *Kerr,* 526 F.3d at 70.

22 |     **A.    Hourly Rates**

23 |     In order to decide what rates are "reasonable," courts look at "prevailing

24 | market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895, 104

25 | S. Ct. 1541, 79 L. Ed. 2d 891 (1984); *Davis v. City of San Francisco*, 976 F.2d

26 | 1536, 1545 (9th Cir. 1992), *vacated on other grounds,* 984 F.2d 345 (9th Cir.

27 |

1   1993) (a reasonable hourly rate should be determined "by reference to the fees that

2   private attorneys of an ability and reputation comparable to that of prevailing

3   counsel charge their paying clients for legal work of similar complexity").   In

4   determining the prevailing market rates, courts generally look at rates charged by

5   attorneys practicing within the forum district. *See, e.g., Gates v. Deukmejian,* 987

6   F.2d 1392, 1405 (9th Cir. 1992).

7        Here, Plaintiffs are seeking to recover attorneys' fees incurred both by the

8   New York Law Firm of Fried, Frank, Harris, Shriver & Jacobson, LLP ("FFHS &

9   J") and the Mexican American Legal Defense and Education Fund ("MALDEF"),

10  Los Angeles Regional Office.[3]  Specifically, Plaintiffs are requesting fees for the

11  following legal professionals at the following hourly rates:

12       **MALDEF**

13  (1)   Thomas A. Saenz (Attorney, $400)

14  (2)   Hector Villagra (Attorney, $350)

15  (3)   Belinda Escobosa Helzer (Attorney, $280)

16  (4)   Enrique Gallardo (Attorney, $330)

17  (5)   Norma Vega (Paralegal, $160)

18  (6)   Fermin Rodriguez (Paralegal, $160)

19       **FFHS & J**

20  (1)   Marjorie Purcell-Owens (Attorney, $ 376)

21  (2)   Fred Wilks (Attorney, $338)

22  (3)   Erin Walsh (Attorney, $269)

23  (4)   Donna McNally (Paralegal, $150)

24

25       [3]      Throughout the case, MALDEF served as lead counsel for Plaintiffs.  Starting in
26  2001, FFHS & J "associated in" as pro-bono co-counsel "due to the vigorous opposition by the
    Government and protracted litigation resulting therefrom."  Reply at 12.
27

1    To justify the rates charged, Plaintiffs offer declarations from all of the

2    attorneys named above.   With respect to the MALDEF attorneys, the declarations

3    reflect the following: (1) Attorney Saenz, a 1991 graduate of Yale Law School,  is

4    the Vice President of Litigation for MALDEF and has litigated numerous high-

5    profile civil rights actions; (2) Attorney Villagra is a 1994 graduate of Columbia

6    Law School who, after completing state and federal court clerkships, spent several

7    years in private practice litigating complex civil rights cases before becoming

8    Regional Counsel for the Los Angeles MALDEF Regional Office;  (3) Attorney

9    Escobosa Helzer is a 2000 graduate of Southwestern University School of Law and

10   served as a MALDEF Staff Attorney for Immigrant's Rights from December 2001

11   to December 2004; and (4) Attorney Gallardo is a 1997 graduate of the University

12   of California, Berkeley, Boalt Hall School of Law and served as a MALDEF Staff

13   Attorney from May 1999 through May 2001.

14   With respect to the FFHS & J attorneys, the declarations reflect: (1) Attorney

15   Purcell-Owens is a 1996 graduate of UCLA Law School and has been working in

16   the field of complex civil litigation for nine (9) years; (2) Attorney Wilks is a 1999

17   graduate of UCLA Law School and worked intermittently as an attorney for FFHS

18   & J, in the area of complex civil litigation, from the fall after his graduation

19   through June of 2005; and (3) Attorney Walsh is a 2001 graduate of UCLA Law

20   School and worked as a litigation associate for FFHS & J from October of 2001 to

21   December of 2003.

22   Defendants dispute the reasonableness of the rates charged by *all* of these

23   individuals.  In support of their position, they offer "expert" declarations from

24   Boyd Lemon and Jerald Udinsky.  Mr. Lemon is an attorney, licensed in California,

25   with more than  20 years' of litigation experience, as well as 10 years of experience

26   as an arbitrator of fee disputes for both the California State Bar and the Los

27

- 7 -

1    Angeles County Bar.  Dec. of Boyd S. Lemon at ¶2.  Based on his review of "26

2    pleading files and 19 correspondence files and thousands of pages of deposition

3    transcripts" pertaining to the instant case, Mr. Lemon opines that "the hourly rates

4    charged by both MALDEF and Fried are unreasonable in that they exceed the range

5    of hourly rates charged by comparable firms handling comparable cases in the Los

6    Angeles community." *Id.* at ¶10.  Specifically, with respect to the MALDEF

7    attorneys,  Mr. Lemon opines that (1) attorney Saenz's rate of $400 was "20%

8    excessive for an attorney with 8 to 12 years experience; (2) Attorney Villagra's rate

9    of $350 was 18% excessive for an attorney with 6 to 9 years experience; (3)

10   Attorney Gallardo's rate of $330 was 20% excessive for an attorney of 3 to 4 years

11   experience; and (4) Attorney Escobosa Helzer's rate of $280 was 18% excessive

12   for an attorney with 1 to 4 years experience. *Id.* at ¶11.  He also states that "the

13   paralegal's rate of $160 per hour is excessive by 20%."  *Id.*

14        With respect to the FFHS & J attorneys, Mr. Lemon opines that (1) Attorney

15   Prucell-Owens' rate of $380 per hour was 25% excessive for an attorney with 4 to

16   6 years experience; (2) Attorney Wilks' rate of $325 per hour was 25 % excessive

17   for an attorney with 4 to 6 years experience; (3) Attorney Walsh's rate of $ 290 per

18   hour was 25% excessive for an attorney of 0 to 2 years of experience. *Id.* at ¶12.

19   Finally, he opines that "the paralegal's rate of $150 per hour was 15 % excessive."

20   *Id.*

21        Defendants' other expert, Mr. Udinsky, is a financial economist with M.A.

22   and Ph.D. degrees in Economics from the University of California at Berkeley.

23   Dec. of Jerald Udinsky at ¶ 1. He declares that hourly rates charged by Plaintiffs'

24   attorneys are higher than those listed in "at least one well respected statistical

25   benchmark"—the Altman Weil 2005 Survey of Law Firm Economics.  *Id.* at ¶12.

26   A copy of that survey is attached to Udinsky's declaration as Exhibit 5.   The

27

- 8 -

1  survey identifies "standard hourly billing rates" for attorneys in the consolidated

2  metropolitan area of Los Angeles, Riverside, and Orange County, California, based

3  on ranges of years of experience.

4  In their Reply, Plaintiffs seek to discredit Mr. Lemon's conclusions by

5  noting that he has not offered any concrete comparisons between rates charged by

6  Plaintiffs' attorneys and those charged by other firms in the Los Angeles area.  The

7  Court agrees that because he does not offer specific examples of comparable hourly

8  rates for Los Angeles attorneys with equivalent experience, it unclear how Mr.

9  Lemon arrived at the specific percentages of "excessiveness" for each professional.

10  To the extent that these percentages are derived from comparisons with the

11  average rates set forth Altman Weil survey attached to the Udinsky declaration,

12  they are also unhelpful, as that survey does not categorize the relevant firms by

13  practice areas, nor does it indicate the relative expertise of the attorneys surveyed.[4]

14  *C.f. Ramirez v. Runyon*, 1999 U.S. Dist. LEXIS 20544 at *19  (N.D. Cal. 1999)

15  (declining to consider billing rate survey for San Francisco metropolitan area that

16  did "not differentiate between areas of practice or skills and expertise of various

17  attorneys.").  Nevertheless, Mr. Lemon's findings are entitled to some weight.

18  For their part, Plaintiffs' declarations establish that Attorney Saenz, at the

19  very least, is regarded among the top attorneys in the state in the field of civil rights

20  litigation, which could allow for a fee award at a higher hourly rate than the

21  statistical average in the relevant community. *Compare, e.g.,  Harrington v. City of*

22  *Napa*, 2005 U.S. Dist. LEXIS 32341 (N.D. Cal. 2005) (granting fees at hourly rate

23  of $400 per hour for experienced civil rights attorney); *c.f. Chalmers v. Los*

24  *Angeles*, 796 F.2d 1205, 1215 (9th Cir. 1986), *amended by Chalmers v. Los*

25

26  [4]   The firms surveyed are not named.

27

- 9 -

1  *Angeles*, 808 F.2d 1373 (9th Cir. 1987) (allowing for fees at a higher rate where

2  "Plaintiff's counsel [was] experienced in [the matter] and his performance in the

3  initial appeal and in the subsequent rehearing was above average.").[5]

4  Concomitantly, the "less experienced" attorneys from both MALDEF and FFHS &

5  J have "above average" experience (many have completed judicial clerkships), such

6  that they, too, might be entitled to an hourly rate higher than that of some of their

7  peers. *See, e.g., Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 719 (5th

8  Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron,* 489 U.S. 87

9  (1989) ("Longevity per se, however, should not dictate the higher fee. If a young

10 attorney demonstrates the skill and ability, he should not be penalized for only

11 recently being admitted to the bar.").

12      In addition, Plaintiffs offer a declaration from their own expert, Mr. Richard

13 Larson.  Mr. Larson is an attorney admitted to practice in Minnesota, New York,

14 and California.  He is an experienced civil rights litigator who has served as a

15 Senior Attorney with the National Employment Law Project (1970-4), as National

16 Staff Counsel with the ACLU (1974-86) and as Vice President for Legal Programs

17 with the Mexican American Legal Defense and Educational Fund (1986-94).  Dec.

18 of Richard Larson at ¶¶3-6.  In addition, he has presented oral argument before the

19 United States Supreme Court in two attorneys' fees cases, *White v. New Hampshire*

20 *Department of Employment Security*, 455 U.S. 445 (1982) and *Smith v. Robinson*,

21 468 U.S. 992 (1984), and has authored a seminal treatise on federal court attorneys'

22 fees law and practice. *Id.* at ¶ 7.

23 

24      [5]      Plaintiffs also point out that Judge Otero recently entered a fee award in a civil
   rights case litigated by Mr. Saenz in which Mr. Saenz's hourly rate was $450.  Judge Otero's
25 decision noted that: "[i]t is not subject to reasonable dispute that Mr. Saenz is one of the best and
   most influential lawyers in California."  *See Order Granting Motion for Attorneys' Fees and*
26 *Costs*, CV 04-3521 SJO (Ex), August 22, 2005 at 5, n.3.

27                                         - 10 -

1   Mr. Larson declares that he is "generally familiar with the billing rates
2   charged by law firms in Los Angeles" and with "the prevailing market rates for
3   litigators based on levels of experience." *Id.* at ¶8.   Based on his review of the
4   attorneys' credentials in this case, Mr. Larson opines that the rates charged are
5   "within market rates in the Los Angeles area for litigators of comparable
6   experience." *Id.* at ¶¶ 10, 14. He further opines that the paralegals' rates are
7   reasonable by this same measure. *Id.*   Finally, Mr. Larson declares that Attorney
8   Saenz is an attorney of the utmost skill, based on his [Larson's] having worked
9   with him [Saenz] on multiple complex civil rights cases and having co-taught a
10  "Civil Rights Litigation" course at the University of Southern California Law
11  School. *Id.* at ¶11.

12  Based on the attorneys' and experts' declarations and its own experience, the
13  Court finds that the hourly rates for attorneys Saenz, Villagra, and Escobosa Helzer
14  are reasonable.   With respect to attorneys Gallardo, Purcell-Owens, Wilks and
15  Walsh, the Court determines that their hourly rates should be reduced to $300,
16  $325, $290, and $200, respectively.   With respect to the paralegals, the Court finds
17  that a reasonable hourly rate is $125.   The Court would note that there is nothing
18  in the record to indicate that any of the paralegals possessed skills or performed
19  tasks beyond those of an average paralegal in a civil litigation firm working in the
20  relevant community.

21  **B.     Number of Hours Expended**

22  The party seeking attorneys' fees bears the burden of submitting detailed
23  time records which justify the hours spent working on the claims. *Hensley,* 261
24  U.S. at 434.   "Where the documentation of hours is inadequate, the district court
25  may reduce the award accordingly." *Id.* at 433. The court may also reduce its fee
26  award for hours that are "excessive, redundant or otherwise unnecessary." *Id.*

27

1    In the instant case, Plaintiffs have produced detailed billing statements for all

2  of the relevant legal professionals during the relevant time periods.[6]   However,

3  Defendants argue that total hours expended are excessive, due to "duplicative

4  efforts or excessive staffing."  In support of their position, Defendants rely once

5  again on the declaration of Mr. Udinsky.  Mr. Udinsky explains that he was given

6  copies of all of the relevant  billing statements from MALDEF and FFHS & J.

7  Dec. of Udinsky at ¶2.  He proceeded to input the time records from each statement

8  into a Microsoft Excel spreadsheet and separated them by attorney and type of

9  work performed (as reflected on the time sheets) into the following categories: (1)

10  attending court; (2) deposition attendance; (3) conferences; (3) drafting; (4) memo;

11  (5) proofread; (6)  preparation/organize; (7) research/read; (8) review; (9) revise;

12  (10) travel; and (11) internal communication. *Id.* at ¶4.  He declares that he found

13  the following problems with the bills: (1) there were many research hours billed by

14  junior attorneys; (2) there was considerable conferencing between firms; (3)

15  multiple lawyers attended many of the depositions; (4) several lawyers worked on

16  summary judgment; and (5) on certain days there were considerable total hours

17  billed by both firms. *Id.* at ¶¶5-10.

18

19

20       [6]       Defendants make much of the fact that the attorneys from FFHS & J used "block

21  billing," such that some time entries reflect the performance of more than one task. However, as

22  the Supreme Court has long recognized, a party seeking attorneys' fees is "not required to record
   in great detail how each minute of . . . time was expended." *Hensely,* 461 U.S. at 437, n.12; *see*

23  *also  Oberfelder v. City of Petaluma,* 2002 U.S. Dist. LEXIS 8635 at *9 (N.D. Cal. 2002) ("The
   charge of blocked billing does not undermine the compensability of time reasonably expended

24  where the billing statement meets the basic requirement of listing the hours and identifying the
   general subject matter of time expenditures.").  Although they reflect the performance of multiple

25  tasks, the time entries by the FFHS & J professionals are detailed in their descriptions of the

26  subject matter of the work performed. Thus, the Court finds that the FFHS & J billing statements
   are adequate.

27

- 12 -

1    Defendants' other expert, Mr. Lemon, also opines on the excessiveness of

2  the total hours expended.  Specifically, he notes that "no informed client" would

3  pay for more than one attorney to attend a deposition and thus recommends that half

4  of the fees incurring in the taking of depositions be deducted from the Court's

5  ultimate fee calculus.  Dec. of Lemon at ¶¶ 8, 14.  In addition, he recommends

6  deduction of one-third of the time spent in trial because "it is not reasonable to

7  have more than two attorneys attend a trial of this nature, and most of the time

8  Plaintiff's had three attorneys and a paralegal in trial, while the U.S. Attorney's

9  Office had two attorneys and a paralegal."  *Id.* at ¶8.  Finally, Lemon opines that

10  there were simply "too may billers" who spent an excessive amount of time on

11  "multiple reviews" of documents, resulting in an excess of time spent between 30%

12  to 60% for written work product, such as the opposition to the motion for summary

13  judgment, motions in limine and the pre-trial orders.  *Id.* at ¶¶ 16-17.  Ultimately,

14  Lemon recommends that the fee award be reduced to $443,000.  *Id.* at ¶23.

15    The Court concludes that there was some redundancy with respect to trial

16  (preparation, conferencing) and written work (document review, research, etc.), but

17  not to the extent  advanced by Defendants.  As the attorneys themselves explain,

18  with regard to written briefs, more than one attorney was working on them at any

19  given time, but these individuals were all assigned separate sections of the briefs

20  and did not duplicate each other's research and writing.  *See* Dec. of Purcell-Owens

21  at ¶5; Supp. Dec. of Villagra at ¶ 6.  However, if, during their independent

22  research, one attorney encountered authority that supported another's assigned

23  section, they would confer with one another.  *Id.*

24    Indeed, as the Ninth Circuit has long recognized, "the participation of more

25  than one attorney does not necessarily constitute an unnecessary duplication of

26  effort."  *Kim v. Fujikawa,* 871 F.2d 1427, 1435, n.9 (9th Cir. 1989) (internal

27

- 13 -

1    citations omitted).   Courts routinely grant fees for cases in which more than one
2    attorney is involved, and the number of attorneys involved often correlates with the
3    case's complexity. *Accord ACLU v. Barnes*, 168 F.3d 423, 432 (11th Cir. 1999)
4    ("The fee applicant is entitled to recover for the hours of multiple attorneys if he
5    satisfies his burden of showing that the time spent by those attorneys reflects the
6    distinct contribution of each lawyer to the case and is the customary practice of
7    multiple-lawyer litigation."). Having presided over this case from its inception, the
8    Court is in a position to observe that it was in fact the type of action which
9    necessitated more than one attorney's involvement to (successfully) litigate. It also
10   merits noting that not every single "biller" worked on the case during the same time
11   period; this action has been ongoing and active since 1999 and there has
12   necessarily been some staffing "turnover" at both MALDEF and FFHS & J. For
13   example, Attorney Gallardo and paralegal Vega's involvement with the case ceased
14   on June 25, 2001 and January 31, 2002, respectively.

15          Moreover, the fact that the U.S. Attorney's Office allocated fewer staff to the
16   case than MALDEF or FFHS & J is not dispositive regarding the Court's
17   assessment of redundancy and/or inefficiency. *See, e.g., Henson v. Columbus Bank*
18   *& Trust Co.*, 770 F.2d 1566, 1574 (11th Cir. 1985) (noting that "the number of
19   hours needed by one side to prepare adequately may differ substantially from that
20   of opposing counsel because the nature of the work on each side may differ
21   dramatically."). As Plaintiffs point out, this case was vigorously litigated at every
22   stage, even with respect to defenses for which there was little to no legal
23   justification. *Id.* at 1575 ("While [defendants are] entitled to contest vigorously
24   [plaintiff's] claims, once they do so they cannot then complain that the fees award
25   should be less than claimed because the case could have been tried with less
26   resources and with fewer hours expended.").

27

1    Finally, Plaintiffs have already substantially reduced the number of "billers"

2   for whom they seek to recover fees.  Specifically, Plaintiffs explain that they have

3   omitted time billed by MALDEF associate attorney Shaheena Ahman Simons

4   (while Attorney Helzer was on maternity leave) , MALDEF paralegal Cynthia

5   Rangel (45+ hours) and numerous law clerks and summer associates (at least 500

6   hours). Dec. of Saenz at ¶7; Supp. Dec. of Villagra at ¶ 7; Supp. Dec. of Alexander

7   at ¶ 3.  FFHS & J also omitted 211.2 hours of work performed by additional

8   attorneys.  Supp. Dec. of Alexander at ¶3.  To compensate for any further

9   duplicative work, such as factual research and conferencing, Plaintiffs have further

10  reduced their fee request by 10% for the MALDEF staff and 30% for the FFHS & J

11  staff, for a total reduction of $90,927.98.  The Court finds that these reductions do

12  serve to eliminate some of the redundancies.

13    In sum, the Court concludes that the mere fact that there were multiple

14  attorneys involved in the case does not necessitate a finding that counsel were

15  inefficient in performing every task.  Nevertheless, the Court agrees with

16  Defendants that the presence of more than two attorneys at depositions and trial was

17  "excessive, redundant or otherwise unnecessary," and that there was duplicative

18  time spent on some written work.  Thus, the Court will reduce the hours billed by

19  each of the attorneys who attended the trial, on the days from the beginning of trial

20  to the end of trial, by one-third.  In addition, the total fee award is reduced by

21  another twenty (20%) percent (in addition to the 10% MALDEF and 30% FFHS & J

22  discounts taken by Plaintiffs) to account for duplicative work and multiple attorney

23  involvement on depositions and other pre-trial matters.  As set forth below, with

24  these additional reductions, the resulting "lodestar" is **$ 928,928.90.**

25

26

27

MALDEF

| Name | Rate | Hours | Total |
|------|------|-------|-------|
| Seanz | $400 | 70.7 (2/3 of trial hrs) | $28,280.00 |
| Villagra | $350 | 1038.8 (2/3 of trial hrs) | $363,580.00 |
| Gallardo | $300 | 149.25 | $44,775.00 |
| Escobosa Helzer | $280 | 1665.7 (2/3 of trial hrs) | $466,396.00 |
| Vega | $125 | 24.0 | $ 3,000.00 |
| Rodriguez | $125 | 75.4 | $ 9,425.00 |
| **Sub-Total** | | | **$915,456.00** |
| **LESS 10%** | | | $91,545.60 |
| **Total** | | | **$823,910.40** |

FFHS & J

| Name | Rate | Hours | Total |
|------|------|-------|-------|
| Purcell-Owens | $325 | 819.2 | $266,240.00 |
| Wilks | $290 | 325.2 | $94,308.00 |
| Walsh | $200 | 539.6 | $107,920.00 |
| McNally | $125 | 106.55 | $13,318.75 |
| **Sub-Total** | | | **$481,786.75** |
| **LESS 30%** | | | $144,536.03 |
| **Total** | | | **$337,250.72** |

Grand Total: $ <u>928,928.90</u> (823,910.40+ 337,250.72=1,161,161.12, less 20%)

## C.    Additional Factors Under *Kerr*

Defendants argue that the "lodestar" should be further reduced to account for Plaintiffs' limited success and/or to make the fee award roughly equivalent to the total amount of damages rewarded ($230,000).   However, it unreasonable to suggest that Plaintiffs' success in this case was significantly "limited."   Although

- 16 -

1    the Fifth Amendment and California statutory and constitutional claims were

2    dismissed against the individual agents, Plaintiffs prevailed on all of their FTCA

3    claims, an accomplishment that legally precluded additional assessment of liability

4    on the part of the individual agents. *See Schwarz v. Secretary of Health & Human*

5    *Servs.*, 73 F.3d 895, 901 (9th Cir. 1995) ("[A] plaintiff who has won substantial

6    relief should not have [her] attorney's fee reduced simply because the district court

7    did not adopt each contention raised.") (internal citations and quotations omitted).

8    Thus, an additional reduction in fees for "limited success" is unwarranted.

9                                          **CONCLUSION**

10          For all of the foregoing reasons, the Court approves an award of attorneys'

11   fees to Plaintiffs' counsel in the amount of **$928,928.90**.

12

13   IT IS SO ORDERED.

14   DATE: June 2, 2006

                                   CONSUELO B. MARSHALL
15                                 UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27